IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DANIEL STOLLEY                        §
                                      §
V.                                    §        CIVIL ACTION NO. 4:04-CV-303-Y
                                      §
LOCKHEED MARTIN                       §
AERONAUTICS COMPANY                   §

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pending before the Court is plaintiff Daniel Stolley's Motion for Partial Summary Judgment [doc. # 38] and defendant Lockheed Martin Aeronautics Company's Motion for Summary Judgment [doc. # 40], both of which were filed February 28, 2006. After consideration of the motions, the responses, and the replies, the Court DENIES Stolley's motion for partial summary judgment and GRANTS Lockheed's motion for summary judgment.

## I. BACKGROUND

This case arises from an employment dispute between Stolley and Lockheed. On February 13, 2003, Stolley sought employment as an aircraft assembler at Lockheed's manufacturing facility in Fort Worth. Stolley stated in his application that he was able to perform shift work, rotational work schedules, overtime, and work schedules that included Saturdays and Sundays. Two days later, Stolley accepted Lockheed's job offer and agreed to start on February 24. The terms of employment for aircraft assemblers like Stolley were governed by a collective-bargaining agreement ("the CBA") between Lockheed and Local Lodge 776 of the International Association of Machinists and Aerospace Workers ("the Union"). The CBA included seniority provisions that gave preferential rights, such as shift-preference and bumping rights, to employees who had accumulated

more seniority.

After starting work and while still a probationary employee, Stolley learned on February 27 that he had been assigned to the second shift in the final-assembly department.  The second-shift work hours were 3:45 p.m. to 12:15 a.m., Monday through Friday.  Stolley notified Lockheed that members of his church, the United Church of God, observed the Sabbath from sundown on Friday until sundown on Saturday; thus, his religious beliefs conflicted with and prevented him from working the second shift.  Cris Gill, a Lockheed employee responsible for helping to assign personnel to the various departments, discussed whether Stolley could be assigned to the wings department, which only worked first-shift hours—7:00 a.m. to 3:45 p.m., Monday through Friday.  Although the wings department saw no problem with reassigning Stolley there, the labor-relations department told Gill that the seniority provisions of the CBA prohibited the reassignment.  Indeed, the CBA provides that shift swaps and transfers are controlled by seniority, which is determined by job classification within a department.

Stolley then contacted his Union representative and a labor analyst, who was determining whether accommodation could be made for Stolley.  Stolley asked to be transferred to a first-shift job or be allowed to work different hours than those established for second-shift employees.  Because Stolley's alternatives either would have violated the seniority provisions of the CBA or would have required that he be paid overtime pay for the make-up hours he was willing to work,[1] the labor analyst contacted the Union to determine whether it would be willing to waive the seniority provisions of the CBA that prohibited Stolley from being reassigned to a different department or to

---

[1]Under the CBA, Lockheed would have had to pay Stolley overtime pay 1½ times his hourly rate for each hour worked for reporting early on Fridays and 2 times his hourly rate in premium pay for hours worked on Saturdays or Sundays.

a different work shift.  The Union was unwilling to waive the provisions for Stolley.  The Union was also unwilling to waive the overtime-pay provisions.

Stolley continued to work for Lockheed in the final-assembly department on the second shift until he was fired on March 14 for leaving work before sundown on each of the Fridays he was scheduled to work.  Because he had been employed by Lockheed for less than 35 days, he was still a probationary employee when he was fired.  Stolley filed a charge of discrimination with the Equal Employment Opportunity Commission.  After the EEOC issued a right-to-sue letter, Stolley filed suit against Lockheed in this Court.  Stolley claims that Lockheed violated the religious-discrimination provisions of Title VII of the Civil Rights Act of 1964 by: (1) assigning him to the second shift of the final-assembly department "knowing" that he could not work second-shift hours on Fridays[2]; (2) failing to reasonably accommodate his religious beliefs by assigning him to the wings department or another department that worked only shifts that did not extend  beyond sundown on Friday; and (3) asking whether prospective employees could work on Saturdays and Sundays, which creates a disparate impact on individuals with religious beliefs similar to Stolley's. (Plf.'s Orig. Comp. at 4-5.)

Lockheed seeks judgment as a matter of law because there is no evidence that Lockheed had an available, reasonable accommodation for Stolley that would not have violated the CBA.  Stolley seeks partial summary judgment based on the fact that he has shown, as a matter of law, that Lockheed failed to reasonably accommodate his religious beliefs.

---

[2]Stolley concedes that Lockheed did not assign him a second-shift job knowing that such a work schedule would conflict with his religious beliefs. (Plf.'s Resp. at 1.)  Thus, this contention will not be addressed further.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmovant bears the burden of proof. Rather, in that situation, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323-35. Where, however, the moving party bears the burden of proof on the claim upon which it seeks summary judgment, it must present evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

When the moving party has carried its summary judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. FED. R. CIV. P. 56(c); *see Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule

56 "does not impose on the district court a duty to sift through the record in search of evidence to

support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909,

915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific

evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their

claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Additionally, summary judgment is an appropriate mechanism for resolving issues of law

arising from a materially complete factual record. *See Trevino v. Yamaha Motor Corp.*, 882 F.2d

182, 184 (5th Cir. 1982). Furthermore, disputes over the legal inferences to be gleaned from the

facts in evidence will not prevent summary judgment; thus, where a nonmovant merely debates the

consequences flowing from admitted facts, summary judgment is proper. *See Beck v. Somerset

Techs., Inc.*, 882 F.2d 993, 998 (5th Cir. 1989). It is also clear that "[w]hen everything that can be

adduced at trial is before the judge . . . and the parties, while urging conflicting ultimate facts or

conclusions, have no evidentiary disputes, a trial serves no useful purpose." *Brown v. U.S.*, 890 F.2d

1329, 1334 (5th Cir. 1989) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986)).

Summary judgment is always appropriate when there is no need to put the parties or the Court to the

time and expense of a trial.


## III. DISCUSSION

### A. REASONABLE ACCOMMODATION

Title VII prohibits religious discrimination in employment. *See* 42 U.S.C.A. § 2000e-2(a)

(West 2003). An employer engages in an unfair employment practice if he discriminates against an

employee because of any aspect of his religious practices or beliefs, unless the employer shows that

it cannot "reasonably accommodate" the employee's religious needs without "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j) (West 2003).

To establish a prima-facie case of religious discrimination, Stolley must show that (1) he has a bona-fide religious belief that conflicts with an employment requirement; (2) he informed Lockheed of this belief, and (3) he suffered an adverse employment decision because of failure to comply with the conflicting-employment requirement. *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Once Stolley establishes a prima-facie case, the burden shifts to Lockheed to show that it was unable to reasonably accommodate Stolley's beliefs without undue hardship. *See id.* But Title VII does not require that the accommodation infringe on the rights of fellow employees:

> The repeated, unequivocal emphasis of both the language and the legislative history of Title VII is on eliminating discrimination in employment, and such discrimination is proscribed when it is directed against majorities as well as minorities . . . . It would be anomalous to conclude that by "reasonable accommodation" Congress meant that an employer must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

*Trans World Airlines v. Hardison*, 432 U.S. 63, 81 (1977). Further, Lockheed is not required by Title VII to create an exception to its seniority system to avoid conflict with Stolley's religious beliefs. *See id.* at 83. Indeed, where seniority-bidding provisions in collective-bargaining agreements conflict with the religious beliefs of an employee so that no accommodation is possible, an employer will not be liable for its failure to accommodate. *See Hardison*, 432 U.S. at 79; *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982); *see also Equal Employment Opportunity Comm'n v. Dalfort Aerospace, L.P.*, No. 3:00-CV-666-P, 2002 WL 255486, at *4 (N.D. Tex. Feb. 19, 2002).

6

Here, the evidence shows, as a matter of law, that Lockheed could not reasonably accommodate Stolley's religious beliefs. Although Lockheed discussed alternatives with Stolley, no accommodation was possible based on the CBA. The evidence, including the relevant provisions of the CBA, establishes that no alternative existed that would accommodate Stolley and not simultaneously violate the CBA. Indeed, Lockheed's briefs amply and convincingly set out the reasons why the accommodations Stolley previously suggested to Lockheed (and belatedly suggests now on summary judgment) would have run afoul of the CBA. Stated another way, there is no evidence that Lockheed could have reasonably accommodated Stolley's religious beliefs. Thus, Lockheed cannot be held liable for its failure to accommodate.


## B. Disparate Impact

In his complaint, Stolley also asserts that Lockheed's application question regarding an applicant's ability to work Saturdays and Sundays causes Lockheed to select applicants in a significantly discriminatory pattern. To establish a disparate-impact claim, Stolley must engage in a systematic analysis of the policy or practice challenged as having a discriminatory adverse impact and must, necessarily, rely heavily on statistical proof. *See Frank v. Xerox Corp.*, 347 F.3d 130, 135 (5th Cir. 2003); *Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 1999). Stolley must show that the policy or practice discriminated against him and others similarly situated within a protected group in a pattern that is shown to be significantly discriminatory or markedly disproportionate. *See Banks v. E. Baton Rouge Parrish Sch. Bd.*, 320 F.3d 570, 579 (5th Cir. 2003); *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002).

Stolley has failed to produce any evidence to support such a prima-facie case. Indeed, he

raises no argument to oppose Lockheed's summary-judgment motion on this point.  Thus, Lockheed is entitled to judgment as a matter of law.

## IV. CONCLUSION

There is no evidence that Lockheed could have reasonably accommodated Stolley's religious beliefs without violating the CBA; thus, liability under Title VII cannot be sustained.  Because Stolley has failed to proffer any evidence to establish a prima-facie case of disparate impact, Lockheed is entitled to summary judgment on that claim.

SIGNED August 30, 2006.


TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

8